UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| IN RE: | ELAINE STEWART | : | Chapter 13 |
| | | : | |
| | Debtor(s) | : | Bky. No. 08-10109ELF |

# O R D E R

**AND NOW,** the Debtor having commenced this chapter 13 bankruptcy case on January 7, 2008,

**AND**, Washington Mutual Bank, c/o Countrywide Home Loans, Inc. ("Countrywide") having filed a Proof of Claim on March 17, 2008 ("the Proof of Claim"), asserting a claim in the total amount of $45,179.59 ("the Total Claim"), which includes prepetition arrears of $26,681.76 ("the Arrears");

**AND**, Countrywide asserting in the Proof of Claim that its claim is secured by the Debtor's real property;

**AND**, the Debtor having filed Objections to the Proof of Claim on June 9, 2008 and Amended Objections on September 22, 2008;

**AND**, through the Objections and the Amended Objections, the Debtor having contested the accuracy and/or reasonableness of the itemized components of both the Total Claim and the Arrears;

\* \* \*

**AND**, the Debtor having proposed a chapter 13 plan that provides for a cure of the Arrears on the Proof of Claim pursuant to 11 U.S.C. §1322(b)(5);

**AND**, the Debtor having represented that if the Total Claim is allowed only in the amount of approximately $45,179.59, the Debtor intends to modify her chapter 13 plan to provide for full payment of the Total Claim pursuant to 11 U.S.C. §1325(a)(5)(B);

**AND**, Countrywide having represented that it erred in its Proof of Claim in asserting that the Total Claim is only $45,179.59 and that if the Debtor proposes to pay off the Total Claim through her chapter 13 plan, Countrywide will amend the Proof of Claim and assert that the Total Claim is approximately $65,874.50;

**AND**, Countrywide's position that the correct Total Claim is approximately $65,874.50 being based in part on an Order of the Court of Common Pleas, Philadelphia County dated January 3, 2008 and entered on January 16, 2008 ("the Order") in <u>Washington Mutual Bank c/o Countrywide Home Loans, Inc. v. Stewart</u>, No. 3348, July Term 2001 (C.P. Phila.) ("the State Court Action");[1]

**AND**, the parties agreeing that resolution of the issues in the contested matter and the conduct of the hearing presently scheduled for January 13, 2009 (<u>i.e.</u>, the Debtor's Objections and Amended Objections to the Proof of Claim) will be simplified and facilitated if the court were to make a threshold determination whether the Order entered in the State Court Action is binding on this court or whether it is void because it was entered in violation of 11 U.S.C.

---

[1] As long as the Debtor's proposes to cure the Arrears, as opposed to paying the Total Claim, Countrywide does not consider the amount of the Total Claim set forth in the Proof of Claim to be a material issue. However, because the Debtor has represented that if the Total Claim is allowed in the amount of approximately $45,000, she will modify her chapter 13 plan to propose to pay the Total Claim in full through her plan, there is a real dispute between the parties regarding the proper amount of the Total Claim. Therefore, even though Countrywide has not formally asserted, in its Proof of Claim, that the Total Claim is approximately $65,000, there is a real and concrete dispute between the parties and this ruling is not an advisory opinion.

§362(a)(1);

**AND**, both parties having submitted memoranda of law on the issue, which have been considered by the court;

**\*   \*   \***

**AND**, the State Court Action having been commenced on July 21, 2001;[2]

**AND**, judgment by default in the amount of $45,179.59 having been entered in favor of Countrywide and against the Debtor in the State Court Action on September 26, 2001;

**AND**, Countrywide having filed a Motion to Reassess Damages ("the Motion to Reassess") in the State Court Action on November 30, 2007, with a response deadline of December 20, 2008;

**AND**, no response to the Motion to Reassess having been filed;

**AND**, the state court judge having signed an Order on January 3, 2008 ("the Order") granting the Motion to Reassess, which Order states:

> Plaintiff's judgment is hereby Reassessed to $68,874.50, plus interest at the rate set forth in the note and mortgage and costs of this action through and including the Sheriff's Sale of the Property or payment of the mortgage loan in full;

**AND**, the Order not having been entered on the state court docket until January 16, 2008;

**AND**, this court inferring that no hearing was held on the Motion to Reassess because it was uncontested and that the Order was signed by the state court judge in chambers and

---

[2]  In issuing this Order, I have reviewed and considered the state court docket in the State Court Action. A bankruptcy court may take judicial notice of the matters of record in the state courts within its jurisdiction. E.g., In re Soto, 221 B.R. 343, 347 (Bankr. E.D. Pa. 1998).

therefore, that no party had any knowledge of the existence of the Order prior to its entry on the state court docket;

**AND**, in the time period between the signing of the Order and its docketing, (i.e., on January 7, 2008), the Debtor having commenced this bankruptcy case;

\* \* \*

**AND**, the Debtor contending that the Order was not effective until its entry on the state court docket and that such entry, after the commencement of the bankruptcy case, violated the automatic stay, 11 U.S.C. §362(a)(1), rendering the Order void;

**AND**, in response, Countrywide contending that the Order was effective on the date that it was signed (i.e., January 3, 2008), a date prior to commencement of this bankruptcy case and before the automatic stay took effect;

\* \* \*

**AND**, Countrywide's position being based on three (3) legal propositions, all three (3) of which this court concludes are correct statements of the law:

1. the signing of a court order by a judicial officer is a judicial action,

2. in Pennsylvania, the mere entry of a judgment on the docket by the Prothonotary is a ministerial act,   see generally Gotwalt v. Dellinger, 577 A.2d 623, 625 (Pa. Super. 1990) ("prothonotary performs ministerial functions only, and is not authorized to engage in judicial functions"), and

3. under federal law, the performance of a purely ministerial act is not the continuation of a judicial action or proceeding in violation of 11 U.S.C. §362(a)(1), e.g. In re Aultman, 223 B.R. 481, 485 (Bankr. W.D. Pa. 1998); see

also In re Capgro Leasing Associates, 169 B.R. 305, 313-17 (Bankr. S.D.N.Y. 1994).

**AND**, the above three (3) propositions, taken together, sometimes being referred to as the "ministerial exception" to §362(a)(1), an exception which "stems from the common-sense principle that a judicial 'proceeding' within the meaning of section 362(a) ends once a decision on the merits has been rendered," In re Petit, 217 F.3d 1072, 1079 (9th Cir. 2000);[3]

**AND**, the "ministerial exception" to §362(a)(1) not being applicable (and therefore, the automatic stay applying) to judicial action falling within the literal terms of §362(a)(1) that takes place after the commencement of a bankruptcy case, see, e.g., In re Soares, 107 F.3d 969 (1st Cir. 1997);

**AND**, in the circumstances presented in this case, the court concluding that judicial action (as opposed to mere ministerial action) occurred after the commencement of this bankruptcy case and that the entry of the Order in the State Court Action was stayed under §362(a)(1) by the commencement of this bankruptcy case on January 7, 2008;[4]

---

[3] I observe that the term "exception" is probably a misnomer. Cases such as Petit hold that no "judicial action against the debtor" occurs if an order rendered by the court prepetition is docketed postpetition by a court clerk that lacks discretion to modify the terms of the order. This is not an exception but rather a holding that the conduct at issue falls outside the statutory provision. A true "exception" to §362(a)(1) would if action that undeniably constitutes " judicial action against the debtor" were held not subject to §362(a)(1) as a judicially created exception to or gloss on the provision.

[4] Countrywide's position, which finds support in Aultman, is that the only judicial action that took place was the signing of the Order on January 3, 2008 (prior to the bankruptcy case) and that everything that occurred thereafter was the ministerial act of the Prothonotary. In response, the Debtor suggests that because there was no public pronouncement of the court's decision prior to its entry on the docket (i.e, that the Order was a "book-entry" order, see Debtor's Memorandum at 3, rather than a written order that memorialized a decision previously announced in open court or otherwise previously communicated to the parties), the judicial act of rendering a decision on the Motion to Reassess was not completed until its entry on the docket.

---

I am persuaded by the Debtor's argument.

Initially, I observe that none of the Pennsylvania decisions (state or federal) that I have reviewed involve the same facts or the precise issue presented here, i.e., whether a judicial decision that was signed and dated in chambers and without disclosure to any of the parties is effective and complete on signing or upon docketing. See In re Levine, 228 B.R. 164, (Bankr. W.D. Pa. 1998) (underlying facts not entirely clear, but it appearing that the state court publicly issued an opinion and order thereby rendering the subsequent docketing of a judgment a purely ministerial act); Aultman, 223 B.R. at 482 (opinion does not disclose manner in which the court order was rendered, stating only that the decision was made "at the conclusion of litigation," implying that the decision was announced in open court before it was put in written form for docketing); Gotwalt v. Dellinger, 577 A.2d at 624 (case not involving the effective date of a judicial order but rather, the prothonotary's lack of authority to enter judgment under Pa. R. Civ. P. 1037(b) on filing of praecipe by defendant); Lansdowne v. G.C. Murphy Co., 517 A.2d 1318 (Pa. Super. 1986) (case not involving the effective date of a judicial order but rather, the prothonotary's ministerial duty to enter judgment under Pa. R. Civ. P. 1037(a) on filing of praecipe by defendant).

My research does not reveal any Pennsylvania decision (state or federal) that holds that a Pennsylvania judicial decision that was signed and dated in chambers, without some public disclosure of the decision, is effective upon signing rather than docketing. Thus, I consider the precise issue to be one of first impression in this court.

I conclude that the judicial act of rendering a decision in a court case is not complete until the judge's decision regarding the rights of the parties is made public either orally or by placing the decision on the public docket or in some other fashion. In my view, the communication of the "decision" to the parties and/or the public is an inherent part of judicial action. See Ortiz v. O. J. Beck & Sons, Inc., 611 S.W.2d 860, 865 (Tex. Civ. App.1980) (announcement of decision is "integral and necessary part" of the judicial function of rendering judgment); accord Wood v. Griffin & Brand of McAllen, 671 S.W.2d 125, 128 (Tex. App. 1984); People ex rel. Schwartz v. Fagerholm,161 N.E.2d 20, 23 (Ill. 1959). In our jurisprudential system, the exercise of judicial power is a public function. The power is not exercised in secret; an order is not effective instantaneously upon the stroke of the pen in the splendid solitude of the judge's private chambers. See Commonwealth Loan Co. v. Baker, 214 N.E.2d 904, 908 (Ill. App. 1966). Thus, if a decision is announced orally in open court, the judicial action has been completed and the docketing of an order memorializing the decision is purely ministerial. But, where the judge signs an order in chambers and the first public action is the docketing of the order, judicial action is not complete until docketing. Indeed, arguably, in those circumstances, no judicial action or exercise of the judicial power has even taken place prior to some form of public pronouncement of the judge's decision. Therefore, I conclude that there is ongoing judicial action up to the docketing of an order signed in chambers even though, by docketing the order, the clerk is simultaneously performing a ministerial function.

In this case, I infer from the state court docket and the nature of the proceeding that no hearing was held on the Motion to Reassess, that the Order was signed by the judge in chambers and that there was no public notice or announcement of the Order prior to its docketing, thirteen (13) days later. Applying the principles discussed above, in this case, I find that the act of docketing Order had both judicial and ministerial components. Because the act was not purely ministerial, I conclude that the stay

It is therefore and hereby **DETERMINED** that, at the January 13, 2008 hearing, the Debtor may present any and all evidence relevant to her objection to the Total Claim (as defined above) and is not precluded from doing so by the entry of the Order in the State Court Action.

Date:   December 5, 2008

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE

---

precluded further judicial action and that the reassessed judgment is not valid.  See generally In re Myers, 491 F.3d 120, 127 (3d Cir. 2007) (actions taken in violation of the automatic stay are void).

Finally, I point out the limited consequences of this decision.  The effect of this ruling is only that the Debtor will have the opportunity to dispute, on the merits, Countrywide's position that the Total Claim (which is not yet formally part of its filed Proof of Claim) is approximately $65,000.  Whether the Debtor's victory will bear any fruit in the form of a allowed Total Claim sufficiently low to render a "payoff plan" feasible remains to be seen and will depend on the evidence presented at the hearing scheduled for January 13, 2009